CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 05, 2026
Laura A. Austin, Clerk
BY: /s/ K. Lokey
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRIANNA NICOLE MAYS,<br><br>    *Plaintiff,*<br><br>v.<br><br>UNITED STATES, et. al.,<br><br>    *Defendants.* | CASE NO. 3:25-CV-00008<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Brianna Mays ("Mays")—a young wife and mother—suffered a severe cardiac event that left her severely and permanently disabled. She claims that her physicians at the University of Virginia Physicians' Group ("UPG") and Blue Ridge Medical Center ("BRMC") negligently failed to test and treat her for the cardiac issue that nearly took her life despite knowing her family history of cardiac disease.[1] BRMC has moved to dismiss Mays' Federal Tort Claims Act medical malpractice claim, *see* Dkt. 11, and UPG has likewise moved to dismiss Mays' state law negligence claim. Dkt. 5. This memorandum opinion only addresses UPG's motion, which

---

[1] The United States ("Government") is standing in for BRMC because BRMC is considered an employee of the Public Health Service (PHS) by the Department of Health and Human Services (HHS) pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233 (FSHCAA). Dkt. 1 ¶ 7; Dkt. 12 at 1.

seeks dismissal based on Virginia's two-year statute of limitations for personal injury actions.[2] For the following reasons, the Court will deny UPG's motion to dismiss. Dkt. 5.[3]

## BACKGROUND

"[O]ne year and eight months after [Mays] was born," her mother passed away from "sudden cardiac death" and "cardiomyopathy." Dkt. 1 ¶ 6. During her teenage years, Mays "received health care (sic)" from several providers at "Blue Ridge Medical Center." *Id.* ¶ 7.[4] Mays alleges seeing Blue Ridge Medical Center 42 times, beginning in January 2018 and ending in April 2022. *Id.* ¶ 18. In her Blue Ridge medical chart, Mays' family history section read "mother: deceased 26 yrs, MI, cardiomyopathy, diagnosed with heart disease." *Id.*

In 2021, a nineteen-year-old Mays "married . . . and began her family." Dkt. 1 ¶ 8. She sought obstetric and maternal health care from "the University of Virginia Physicians' Group."[5] *Id.* Mays alleges visiting UPG 10 times from 2018 to 2022. *Id.* ¶ 19. In her UPG medical chart, Mays' family history section read "mother died when she was 1 yo with cardiomyopathy" and "cardiomyopathy in her mother; heart attack in her mother." *Id.* ¶ 19. At both Blue Ridge and UPG,

---

[2] By separate order, BRMC's motion to dismiss (Dkt. 11) will be denied without prejudice to allow the parties to complete jurisdictional discovery and re-brief the issue of whether Mays exhausted her administrative remedies within the statute of limitations. If BRMC moves to dismiss again—relying upon exhaustion and the statute of limitations—it must also address the incapacitation issue.

[3] For purposes of this motion to dismiss, the Court exercises its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) as the state law claims against UPG are so related to the federal claims against Blue Ridge that they are "part of the same case or controversy."

[4] Mays alleges nine providers composed her care team, including family nurse practitioners, pediatricians, a physician's assistant, an acupuncturist, and a hospitalist. Dkt. 1 ¶ 7. The specific physicians are "Benjamin Nissley, Michael Hurst, Petheree Nissley, Lois Alderfer, Mark Mendelsohn, Amber Matthews, Benjamin Timothy Brian Brown, Tabatha Davis, [and] Michelle Blair." *Id.* ¶ 8.

[5] Mays alleges receiving care from the following physicians: "Dana L. Redick, Chantal D. Scott, Vanessa Gregg, Rebecca E. Rieck, Megan J. Bray, Denise Stickley Young, Taylor A. Gilmore, Christian Andrew Chisholm." Dkt. 1 ¶ 8.

"Defendants did not appropriately refer Mays for clinical and genetic screening for inherited heart disease" based on her family history. *Id.* ¶ 21.

In May 2022, while "preparing dinner and talking on the phone," Mays "collapsed unconscious on to the floor." Dkt. 1 ¶ 22. Her brother called an ambulance and started chest compressions. *Id.* Emergency technicians "placed [her] on a ventilator," and she remained "in a coma for about three weeks." *Id.* When she came out of the coma, due to a "brain injury from lack of oxygen during her cardiac arrest." Mays "could not use her limbs," had "severely diminished" eyesight, and had "greatly impaired" speech. *Id.* Although rehabilitation helped Mays regain use of her legs and right arm, "her left arm," "eyesight" and "speech" remain "permanent and severely impaired." *Id.*

During her recovery after the cardiac event, "physicians began to suspect [Mays] had an inherited congenital heart disease called 'Long QT Syndrome'" which "can lead to sudden cardiac arrest." Dkt. 1 ¶ 23. She received genetic testing, which revealed "two disease-causing gene variants . . . associated with Familial Dilated Cardiomyopathy and Long QT Syndrome." *Id.* ¶ 24. Mays alleges that the conditions caused by these genetic variants, if discovered, "can be effectively treated through medication" and that "if Defendants had complied with the standard of care [her] inherited heart disease would have been diagnosed and effectively treated prior to her preventable heart attack." *Id.*

She alleges "[t]he Blue Ridge Medical Center providers and the University of Virginia Physicians Group" "were negligent and violated the required standard of care" by "never considering [her] Family Medical History;" by "not telling her about th[e] increased risk;" by "provi[ding] medical care without obtaining from her informed consent;" by "fail[ing] to promptly refer [her] for a focused cardiology examination;" by "fail[ing] to promptly refer [her] for focused

3

genetic screening;" and by "fail[ing] to treat [her] effectively, or at all, for her inherited Long QT Syndrome." *Id.* ¶ 25

## LEGAL STANDARD

To survive a motion to dismiss under 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When deciding a motion to dismiss, a court must accept the factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). However, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted).

Although a complaint "does not need detailed factual allegations" to survive a 12(b)(6) motion, a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rule 12(b)(6) does not require "heightened fact pleading;" however, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (internal citation omitted). A motion to dismiss under Rule 12(b)(6) may only reach an affirmative defense, including a defense asserting that the claim is time-barred, "if all facts necessary to the affirmative

4

defense clearly appear on the face of the complaint." *Id.* (internal punctuation omitted) (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). A defendant must also show "that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint" to prevail at the motion to dismiss stage. *Id.* at 466. Thus, where a tolling doctrine may be applicable, a plaintiff must be given the opportunity to engage in discovery and present evidence. *See, e.g.*, *Sansom v. TSI Corp.*, 2019 WL 1179410, at *2 (S.D.W. Va. Mar. 13, 2019) (Goodwin, J.).

## DISCUSSION

Virginia state law provides that "every action for personal injuries . . . shall be brought within two years after the cause of action accrues." Va. Code § 8.01-243.[6] Medical malpractice claims accrue when "the injury is sustained," not when "the plaintiff discovers the injury. *Id.* § 8.01-230; *Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 708 S.E.2d 834, 837 (Va. 2011). Once "any injury, though slight, is sustained as the consequence of an alleged wrong . . . the statute of limitations begins to run." *Scarpa v. Melzig*, 379 S.E.2d 307, 309 (Va. 1989); *see also Granahan v. Pearson*, 782 F.2d 30, 32-33 (4th Cir. 1985) (applying Virginia statute of limitations to medical malpractice claim).

In Virginia, statute of limitations is an affirmative defense, *id.* § 8.01-235, and therefore courts may consider the merits of it "only when the plaintiff has pleaded sufficient facts on the face of the complaint to apply the relevant statute of limitations to the plaintiff's claim." *Doe v. Green*, 904 S.E.2d 307, 315 (Va. Ct. App. 2024); *see also Robinson v. Nordquist*, 830 S.E.2d 36, 43 (Va. 2019) ("Because the allegations in the amended complaint do not establish this action is

---

[6] Because the claims against UPG are state law claims that the Court is hearing due to its supplemental jurisdiction, the Court will apply Virginia law in analyzing the statute of limitations argument as they are outcome-determinative, and thus, are substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 91-92 (1938).

time barred, Robinson is entitled to a jury trial on this issue."). Because Mays' complaint clearly contains a potential tolling issue—*i.e.*, incapacitation—she must be given an opportunity to present evidence on that issue.

Virginia Code § 8.01-229 tolls the statute of limitations during periods of incapacitation. The face of the complaint reveals a significant period where Mays was incapacitated. Dkt. 1 ¶ 22 (Mays was "placed on a ventilator," was "in a coma for about three weeks," and "could not use her limbs," had "severely diminished" eyesight, and had "greatly impaired" speech). Since, according to UPG, Mays' complaint was only one month late; if she was incapacitated for a month or longer, her complaint would be timely. This tolling issue presents complex factual questions that cannot be resolved on UPG's motion to dismiss.

## CONCLUSION

As such, the Court will deny UPG's motion to dismiss. Dkt. 5.

A separate order will issue.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

Entered this 5th of March, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE