CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 24, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| BRIANNA NICOLE MAYS,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant.* | CASE NO. 3:25-CV-00008<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

Plaintiff Brianna Mays brings this medical malpractice action against the United States, alleging her physicians at the Blue Ridge Medical Center ("Blue Ridge")[1] failed to refer her for genetic testing and treatment based on her family medical history, eventually leading to Mays suffering a severe cardiac episode that caused a "brain injury" and several permanent disabilities. Dkt. 1 ¶ 22. The United States moves to dismiss her complaint in its entirety, arguing the Court lacks subject-matter jurisdiction over the claims because Mays never exhausted her administrative remedies. Dkts. 62, 63. Mays opposes the motion. Dkt. 64. Because the United States is raising a factual challenge to jurisdiction, both parties presented evidence. For the following reasons, the Court will credit Mays' evidence; will make a factual finding that Mays presented her claim to HHS; and will deny the Government's motion to dismiss for lack of subject-matter jurisdiction.

---

[1]    Because Blue Ridge is covered under the Federal Tort Claims Act ("FTCA"), the United States is standing in as a defendant for the purposes of this litigation. Dkt. 1 ¶ 7.

### BACKGROUND[2]

In her complaint, Mays alleges "[t]he Blue Ridge Medical Center providers and the University of Virginia Physicians Group" "were negligent and violated the required standard of care" by "never considering [her] Family Medical History;" by "not telling her about th[e] increased risk;" by "provi[ding] medical care without obtaining from her informed consent;" by "fail[ing] to promptly refer [her] for a focused cardiology examination;" by "fail[ing] to promptly refer [her] for focused genetic screening;" and by "fail[ing] to treat [her] effectively, or at all, for her inherited Long QT Syndrome." *Id.* ¶ 25.

Following Mays' cardiac episode on May 25, 2022, she retained an attorney, who, in turn, attempted to notify the United States Department of Health and Human Services ("HHS") about Mays' medical malpractice claim using the Standard Form 95 ("SF-95"). Her counsel—through his long-term assistant— tried to notify HHS on May 20, 2024 using UPS next-day delivery. Dkt. 17-3 ¶ 6. [3] When addressing the package, counsel's assistant used the incorrect (1) building number (200 Independence instead of 330 Independence),[4] and (2) quadrant designator (SE instead of SW).[5] *Id.*; Dkt. 17-2; Dkt. 17-3 ¶ 7. Thus, the package label read "200 Independence Avenue SE"

---

[2]     The Court previously drafted a full statement of the facts in this case in its opinion on the Government's initial motion to dismiss. Dkt. 50. The Court incorporates that statement of facts into this opinion and only provides facts relevant to the Government's amended motion to dismiss here.

[3]     At this stage of the litigation, the Court assumes Mays' notice to HHS falls within the FTCA's two-year statute of limitations.

[4]     Although the HHS website lists 200 Independence Avenue SW as the address of a building in their headquarters, HHS asserts the correct delivery address for SF-95's is 330 Independence Avenue SW. Dkt. 17-2; Dkt. 63 at 2.

[5]     Counsel's assistant argued UPS software auto-populated the incorrect quadrant designator. Dkt. 17-3 ¶ 9.

instead of "330 Independence Avenue SW." Dkt. 17-3 ¶ 9. UPS corrected both mistakes in the address before delivery. Dkt. 63-1 ("Kendall Depo") 50:20-51:25; 52:15-22.

Plaintiff's counsel received electronic confirmation that UPS delivered the SF-95 the next day to an HHS employee named "Shawn." Dkt. 17-3 ¶ 8. Counsel "went about [his] business, knowing the United States had six months to respond." *Id*. After "four or five months went by without hearing anything," counsel "tried calling" HHS but "had no success" learning the status of Mays' claim. *Id.* He proceeded to file this complaint in federal court, alleging Mays complied with the FTCA's notice requirements. Dkt. 1 ¶¶ 4-5.

The Government insists they never received Mays' SF-95. Dkt. 12. Upon learning of HHS' position, Mays' counsel requested (and the Court granted) jurisdictional discovery. Dkts. 17-3 ¶¶ 9; 18, 34.[6] The parties concluded jurisdictional discovery on April 17, 2026, and the Government filed its amended motion to dismiss soon after. Dkts. 51, 62.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. Challenges to jurisdiction under Rule 12(b)(1) may be raised as either "facial attacks" or "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986). No matter the type of challenge brought, the plaintiff "has the burden of proving that subject matter jurisdiction exists." *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Here, the Government raises a factual attack.

---

[6]     The Court denied the motion to dismiss as moot since parties were conducting jurisdictional discovery. Dkt. 51.

A factual attack challenges the complaint's jurisdictional allegations. In this situation, the "district court is to regard the [] allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *Richmond*, 945 F.2d at 768. The district court "may consider evidence by affidavit [or] depositions" in making its determinations. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction," unless of course the "jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Id.*

### ANALYSIS

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood,* 312 U.S. 584, 586 (1941)). The Government has consented to a limited liability waiver under the FTCA. *Ali v. Fed. Bureau of Prisons*, 522 U.S. 214, 217-17 (2008). Before proceeding on FTCA claims, however, a plaintiff must establish they have presented their claim to the relevant agency—it is a "jurisdictional prerequisite." 28 U.S.C. § 2675(a); *Adeyola v. Reddy*, 718 F. Supp. 464, 473 (E.D.N.C. 2024). The Government argues Mays failed to present her case as the agency lacks any record of her SF-95 in their systems. Dkt. 63 at 5. The Court disagrees.

A plaintiff presents their claim to an agency when an agency "receives . . . an executed [SF-95] or other notification of an incident, accompanied by a claim for money damages." 28 C.F.R. § 14.2(a) (1992). "Mailing alone is not enough; there must be evidence of actual receipt" as "virtually every circuit to have ruled on the issue has held that the mailbox rule does not apply to

[FTCA] claims." *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1252 (9th Cir. 2006); *Rhodes v. United States*, 1993 WL 212495, at *2 (4th Cir. June 15, 1993).

In cases where the agency attests that no record of the complaint exists, a plaintiff may still establish presentment through "evidence that would allow [the] court to conclude the [agency] received [the] SF-95," such as "a return receipt [or] a certified mail number." *See, e.g.*, *Winston-Bey v. United States*, 2015 WL 8757829, at *2 (D. Md. Dec. 15, 2025); *Wolfe v. United States*, 2008 WL 11380185, at *2 (S.D. W.Va. June 12, 2008) (collecting cases). This evidence must not "blatantly contradict" the record. *Adeyola*, 718 F. Supp. 3d at 475. As the Government insists HHS has "no entry of an administrative claim received from Mays," the Court must evaluate if Mays has provided sufficient evidence to allow the conclusion that HHS, despite its assertions, received the SF-95. Dkt. 63 at 5.

Despite the initial mailing label having two errors, *see* Dkt. 17-3 ¶ 7, UPS corrected the address before delivering Mays' SF-95. Specifically, UPS replaced the incorrect label, which was for "200 Independence Avenue SE" (the "side of the Library of Congress"), with a correct label for "330 Independence Avenue SW, Washington, D.C. 20201." Kendall Depo 50:20-51:25; 52:15-22.

The delivery driver, William Thomas, testified that on May 21, 2024, he pulled into the loading dock, unloaded the packages onto the ground, and scanned the barcodes on each package with the Delivery Information Acquisition System ("DIAD") to record his delivery. Dkt. 63-4 ("Thomas Depo") 37:1-41:25. The DIAD in Thomas' truck "captured contemporaneously" the "latitude, longitude, and time of the scan of Brianna Mays' package when it was delivered to" HHS. Dkt. 64 at 7; Thomas Depo 18:14-21. UPS' delivery record reflects that Thomas delivered Mays' package to "Shawn" at "HHS-SAIC." Dkt. 17-1 at 1; Thomas Depo 63:2-16. According to

5

HHS, it did not have an employee named "Shawn" on May 20, 2024. Dkt. 63-2 ("Tyler Depo") 42:24-45:6.[7]

Twenty-four packages were scanned into HHS' system on May 21, 2024; yet, none of them matched the tracking number on Mays' SF-95. Tyler Depo 88:10-20; 117:9-21. According to HHS, it searched the mailroom's system for the Mays' tracking number in the surrounding time period (in case it was delivered on a different day) and found no record of Mays' SF-95 being delivered. *Id.* 117:2-3. Although HHS lacks an internal record of Mays' package, a UPS representative testified that there was "no doubt" that Mays' SF-95 was "delivered to the loading dock at 330 Independence Avenue" on "May 21, [2024] at 10:54am." Kendall Depo 63:15-64:8.

The Government argues Mays "cannot meet her burden of showing HHS received her SF-95" by relying upon evidence from UPS because: (1) UPS' records show delivery to an employee who never worked for HHS;[8] and (2) UPS' records reflect delivery to SAIC, which was not a contractor for HHS' mailroom on May 21, 2024. Dkt. 63 at 11. Mays rebuts these arguments with (1) the testimony of the UPS delivery driver who swears he delivered Mays' SF-95 to HHS on May 21, 2024, and (2) the GPS tracking data that reflects the delivery driver did deliver the package to HHS' address at 330 Independence Avenue.

Because this is a 12(b)(1) challenge, the Court must resolve the factual dispute. The Court, relying on "affidavits" and "deposition testimony" finds that UPS delivered Mays' SF-95 on May 20, 2024 despite HHS not having record of the package in its system. *Adams*, 697 F.2d at 1219. As

---

[7]    HHS had an employee by this name in 2022, but he had not worked for HHS for approximately two years before the delivery in question. Tyler Depo 42:24-43:22.

[8]    The Government's argument does not grapple with the fact that two things can be true: (1) UPS could have delivered the SF-95; and (2) the delivery driver could have written down an incorrect name for the HHS employee who accepted delivery.

such, the Court finds Mays presented her claim to HHS, completing the "jurisdictional prerequisite" for the FTCA's sovereign immunity waiver. *Adeyola*, 718 F. Supp. at 473. Based on this factual finding, the Court has subject-matter jurisdiction, and Mays' claim may proceed.

<u>CONCLUSION</u>

For the foregoing reasons, the Court will dismiss the Government's 12(b)(1) motion to dismiss Mays' claim for lack of subject matter jurisdiction.

A separate order and scheduling order will issue.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this 24th of June, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

7